**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
NDUKWE KALU,

                              **Petitioner,**

            **-against-**

PEOPLE OF THE STATE OF NEW YORK,

                           **Respondent.**
----------------------------------------------------------------x

                                 **REPORT AND**
                                 **RECOMMENDATION**

                                 **08-CV-4984 (NGG)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      On December 8, 2008, *pro se* petitioner Ndukwe Kalu ("petitioner")[1] filed a petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2005 Queens County

conviction for Assault in the Second Degree, N.Y. Penal Law § 120.05(2).  See Pet. for a

Writ of Habeas Corpus (December 8, 2008) ("Pet."), ECF Docket Entry ("D.E") # 1.

Respondent opposes the petition, contending that all of the claims raised by petitioner are

unexhausted and procedurally defaulted.  See generally Resp't Mem. Opp. (May 12, 2009)

("5/12/09 Resp't Mem."), D.E. # 6.

      In response to respondent's contention that the petition contains no exhausted claims,

petitioner, by letter-motion dated May 18, 2009, seeks an order staying the petition while he

returns to state court to exhaust his claims.  See Pet'r Mot. to Stay & Amend (May 18, 2009)

---

[1] Although the docket refers to petitioner as "Kalu Ndukwe," the record makes clear that
petitioner's name is "Ndukwe Kalu."

("5/18/09 Pet'r Mot."),[2] D.E. # 9, at 1. In addition, petitioner seeks to "convert and amend" his habeas petition to reflect the petition as having been brought pursuant to statutory provisions other than 28 U.S.C. § 2254 and, ostensibly, to add new bases for habeas relief. Finally, petitioner asserts that respondent should not have been granted an extension of time to answer the petition, and suggests that his petition should be granted on that basis alone. See 5/18/09 Pet'r Mot., at 2-3. Respondent opposes the motion in its entirety. See Resp't Mem. Opp. (June 3, 2009), D.E. # 10.

On June 2, 2009, the Honorable Nicholas G. Garaufis referred petitioner's motion to stay and amend to the undersigned magistrate judge for decision.[3] See Referral Order (June 2, 2009), D.E. # 12. Thereafter, Judge Garaufis referred the petition for a writ of habeas corpus to the undersigned for a Report and Recommendation on whether habeas relief should be granted. See Referral Order (July 8, 2009), D.E. # 13.

For the reasons that follow, this Court respectfully recommends that (1) petitioner's motion to stay the petition be denied; (2) leave to amend be denied; and (3) the petition be dismissed.

---

[2] The "Writ of Habeas Corpus" attached to petitioner's handwritten May 18th letter-motion was also filed as a separate action in this district. See Pet. for a Writ of Habeas Corpus, Ndukwe Kalu v. N.Y. State Dep't of Corr., et al., No. 09-CV-1512 (NGG) (E.D.N.Y. 2009), D.E. # 1. That case was administratively closed on July 20, 2009.

[3] Because this Court concludes that petitioner's motion to stay and amend should be denied, see infra Parts II & III -- a conclusion that is potentially dispositive -- the Court has issued a Report and Recommendation on this motion, rather than a Memorandum and Order.

## BACKGROUND[4]

Petitioner's conviction arises from the assault on Elena Rohena, petitioner's former fiancé, on August 23, 2003, in a residence shared by Rohena and her mother, Eva Mercedes, in Queens, New York. On that date, Rohena informed petitioner, who was living with Rohena at the time, that she wished to end their engagement. See 8/4/04 Tr. at 4-5. Upon receiving this news, petitioner, armed with a knife and a chair, attacked Rohena, inflicting stab wounds to her head, right forearm, and right hand, and bruising her legs and left forearm. See id. at 5; 5/12/09 Resp't Mem., at 3. According to respondent, Mercedes called 911, but by the time the police arrived at the scene, petitioner had fled. See id.

On August 25, 2003, Detective Burrell visited Rohena at her home in Queens, and questioned her about the events that had transpired two days earlier. See 8/04/04 Tr. at 3-4. Rohena described the assault, and identified petitioner as her attacker. See id. at 4-6. Burrell told Rohena to call him immediately if petitioner returned to the residence. See id. at 7.

The day after Burrell's visit, petitioner returned to the home of Rohena and Mercedes. Mercedes contacted Detective Burrell. See id. at 7-8. When Detective Burrell arrived, Mercedes permitted him to enter the premises; thereafter, Burrell arrested petitioner and

---

[4] Petitioner pleaded guilty pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), which permits a criminal defendant to "voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." Id. For that reason, petitioner did not confirm the facts set forth below, see, e.g., United States v. Savage, 542 F.3d 959, 962 (2d Cir. 2008) ("The distinguishing feature of an Alford plea is that the defendant does not confirm the factual basis for the plea.") (citation omitted), which, unless otherwise noted, are taken from sworn testimony given by Detective Jason Burrell at a suppression hearing held on August 4, 2004 ("8/4/04 Tr."), D.E. # 5-2.

transported him to Central Booking.  See id. at 8-12.

Subsequent to petitioner's arrest, a Queens County grand jury issued an indictment charging petitioner with Attempted Assault in the First Degree, N.Y. Penal Law §§ 110, 120.10(1); two counts of Assault in the Second Degree, N.Y. Penal Law § 120.05(2); Assault in the Third Degree, N.Y. Penal Law § 120.00(1); and two counts of Criminal Possession of a Weapon in the Fourth Degree, N.Y. Penal Law § 265.01(2).

Thereafter, petitioner brought several motions in the trial court.  First, petitioner moved to suppress statements he made to Detective Burrell while being transported to Central Booking.  Following a suppression hearing, petitioner's motion was granted on the ground that, although the arrest had been lawful, Detective Burrell failed to advise petitioner of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), prior to questioning petitioner during the car ride to Central Booking.  See Resp't Decl. Opp. (May 12, 2009) ("5/12/09 Resp't Decl."), Exs. G, H, D.E. # 5.

Second, petitioner, although represented by counsel, brought several *pro se* motions, including a motion to dismiss the indictment on speedy-trial grounds and three separate applications to reduce his bail amount.  All of these motions were denied.  See id. Exs. A, C, E, F.

Third, petitioner moved to dismiss the indictment on the ground that his testimony before the Grand Jury was impaired by the court reporter's unprofessional behavior. Specifically, petitioner alleged that the court reporter became visibly frustrated during the course of petitioner's testimony on account of his heavy accent; chastised petitioner for speaking unclearly; and, at one point during petitioner's testimony, threw up her hands in

disgust, exclaimed that she could not transcribe the testimony, and left her station, returning only after being assuaged by the prosecutor.  See id. Exs. B, D.  See generally Transcript of Hearing Held before the Honorable William Erlbaum (Dec. 22, 2003), D.E. # 5-2.  Following a hearing including testimony from the court reporter, prosecutor, and defense attorney present during the Grand Jury proceedings, the trial court, in a memorandum decision, denied petitioner's motion to dismiss the indictment.  See 5/12/09 Resp't Decl., Ex. D.

On March 2, 2005, petitioner entered an Alford plea to one count of Assault in the Second Degree, N.Y. Penal Law § 120.05(2), in satisfaction of all counts.  See generally Transcript of Hearing Held before the Honorable Daniel Lewis (Mar. 2, 2005) ("3/2/05 Tr."), D.E. # 5-2.  Petitioner was informed of the rights he was waiving by pleading guilty,[5] including the right to a trial by a jury of his peers, the right to confront the witnesses against him, and the right to counsel.  See id. at 17.  Petitioner confirmed that he understood those rights and that, by pleading guilty, he was voluntarily relinquishing them.  See id. at 18-19. Petitioner further indicated that no promises had been made to induce him to plead guilty, other than that, in exchange for pleading guilty, he would be sentenced to no more than three years in custody, with a mandatory period of post-release supervision to follow.  See id. at 18-21.  Petitioner then stated that he understood the terms of the plea bargain, and acknowledged on the record that he was willing to admit, for purposes of disposition, that on August 23, 2003, he caused physical injury to Rohena by means of a dangerous instrument.  See id. at 19-21.

---

[5]  Unless otherwise noted, the terms "Alford plea" and "guilty plea" are used interchangeably in this opinion.

After petitioner indicated his willingness to enter an <u>Alford</u> plea, the court informed petitioner, at the prosecutor's request, that by pleading guilty, petitioner would also be waiving his right to appeal.  Petitioner indicated that he understood this waiver and, after consulting with his attorney, signed a written form acknowledging that he was in fact waiving his right to appeal.  <u>See</u> <u>id</u>. at 19-21.  The court then reiterated to petitioner that by signing the waiver form, he was giving up his right to pursue "any post conviction appeals and the like."  <u>See</u> <u>id</u>. at 21-22.  Petitioner said that he understood, and that as long as he received no more than three years in custody, he would refrain from filing an appeal.  <u>See</u> <u>id</u>.  At the conclusion of the plea proceeding, the case was adjourned for sentencing.  <u>See</u> <u>id</u>. at 23.

On November 14, 2005, petitioner appeared for sentencing with newly retained counsel.  During the sentencing proceeding, petitioner moved to withdraw his <u>Alford</u> plea on the ground that he was innocent.[6]  <u>See</u> 11/14/05 Tr. at 11-19.  Defense counsel conceded that there had been no error in the plea proceedings, and the court denied the motion, finding that the plea proceedings were appropriate and that petitioner's appointed counsel had been effective in negotiating a reduced sentence for petitioner.  <u>See</u> <u>id</u>. at 15-21.  Petitioner then requested permission to appeal the judgment of conviction, which request was denied on account of petitioner's having waived his right to appeal in connection with his guilty plea.  <u>See</u> <u>id</u>. at 22-23.  As previously negotiated, petitioner was sentenced to three years'

---

[6]  Petitioner made several oral *pro se* applications during the sentencing proceeding, as well as a written petition for a writ of habeas corpus pursuant to state law.  Citing speedy-trial grounds, the ineffectiveness of his counsel, and the illegality of his arrest, he moved to dismiss the indictment and to withdraw his plea.  All of these applications were denied.  <u>See</u> <u>generally</u> Transcript of Sentence before the Honorable Daniel Lewis (Nov. 14, 2005) ("11/14/05 Tr."), at 8-21, D.E. #5-2.

incarceration, with credit for time served, to be followed by three years of post-release supervision.  See id. at 25-26.

Despite having waived his right to appeal, petitioner, through new appointed counsel, appealed his conviction to the Supreme Court of the State of New York, Appellate Division, Second Department.  On appeal, petitioner raised two arguments: (1) that petitioner's waiver of his right to appeal was invalid; and (2) that he was deprived of his due process right to a fair Grand Jury hearing on account of the court reporter's unprofessional behavior.  See 5/12/09 Resp't Decl., Ex. I.  On November 13, 2007, the Appellate Division affirmed petitioner's conviction.  See People v. Kalu, 844 N.Y.S.2d 881, 881 (2d Dep't 2007) (citations omitted).  Specifically, the Appellate Division held that "by entering his guilty plea, [petitioner] forfeited his contention that the integrity of the grand jury proceedings was impaired."  See id.  Thereafter, on February 29, 2008, the New York Court of Appeals denied petitioner's application for leave to appeal, see People v. Kalu, 10 N.Y.3d 767, 767 (2008), and petitioner did not collaterally attack his conviction in state court.  He is currently incarcerated.[7]

_____

[7] Petitioner states that he is currently incarcerated because his parole was revoked.  See 5/18/09 Pet'r Mot., at 4.  The record does not reflect the reason for the revocation of parole, nor does it confirm that petitioner is in fact incarcerated due to a revocation of parole and not for some other reason, such as the initiation of removal proceedings brought by Immigration and Customs Enforcement.  See id. at 4-5 (suggesting that removal proceedings have been initiated due to the assault conviction underlying the instant petition).  Whatever the reason for petitioner's current incarceration, because petitioner remains on post-release supervision pursuant to the state court conviction at issue in the petition, he has met the "in custody" requirement of the writ and can seek habeas relief in connection with that conviction.  See Earley v. Murray, 451 F.3d 71, 75 (2d Cir. 2006).

To the extent that petitioner challenges the revocation of his parole as "unlawful[,]" see Pet'r Mot. to Stay, at 4, or challenges the basis for the removal proceedings against him, see id. at

(continued...)

Petitioner timely filed this petition for a writ of habeas corpus on December 8, 2008, alleging violations of his federal constitutional rights pursuant to the Fourth, Fifth, Sixth and Eighth Amendments to the United States Constitution.[8] By letter-motion dated May 18, 2009, petitioner seeks an order staying his habeas petition while he exhausts certain claims in state court. In addition, petitioner seeks to "convert and amend" his habeas petition to reflect it as having been brought pursuant to various statutory provisions other than 28 U.S.C. § 2254 and to add new bases for habeas relief.[9] Petitioner's motion and habeas petition have both been referred to the undersigned magistrate judge.

## DISCUSSION

### I. Timeliness of Respondent's Answer to the Habeas Petition

As a preliminary matter, this Court rejects any suggestion by petitioner that his habeas petition should be granted because respondent failed to timely respond. In support of this argument, petitioner correctly observes that 28 U.S.C. § 2243 (enacted in 1948) requires the "person having custody of the person detained" to answer the petition "within three days unless for good cause additional time, not exceeding twenty days, is allowed." 28 U.S.C.

---

[7](...continued)
4-5, petitioner offers no basis for those challenges. Furthermore, if and when petitioner is subject to a final order of removal, the "sole and exclusive" method to obtain judicial review is to petition the appropriate circuit court of appeals. See 8 U.S.C. § 1252(a)(5). In any event, the record makes clear that the instant petition contests the constitutionality of petitioner's conviction, and not the revocation of his parole or institution of removal proceedings against him.

[8] See *infra* Part II, page 11.

[9] See *infra* Part II.A, note 10 and Part III, pages 14-15.

§ 2243.  Notwithstanding this statutory language, however, both Congress and federal courts

have recognized the impracticability of this requirement, and the necessity for greater

flexibility in determining the time period in which an answer must be made.  See, e.g., Rules

Governing § 2254 Cases, Rule 4 ("If the petition is not dismissed, the judge must order the

respondent to file an answer, motion, or other response within a fixed time[.]"); Rules

Governing § 2254 Cases, Rule 5(a) ("The respondent is not required to answer the petition

unless a judge so orders."); Goldberg v. Tracy, 247 F.R.D. 360, 392 (E.D.N.Y. 2008)

('[T]he statute's speediness requirements have not been observed literally by federal

courts. . . . Obeying the explicit directives of section 2243 is probably not possible under

present calendar conditions in federal courts."); In re Habeas Corpus Cases, 216 F.R.D. 52,

53-55 (E.D.N.Y. 2003) (same).  As Judge Jack B. Weinstein has observed:

> Granting of the writ to those in state custody on the ground that their petitions
> were not timely processed and resolved would result in the release from state
> prisons of hundreds of prisoners who are properly incarcerated.  Such a jail
> delivery would be contrary to congressional design as manifested by AEDPA
> [the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2241
> et seq.].

Goldberg, 247 F.R.D. at 392.

On January 14, 2009, Judge Garaufis issued an order directing respondent to show

cause, within sixty days, why the petition for a writ of habeas corpus should not be granted.

See Order to Show Cause (Jan. 14, 2009), D.E. # 2.  Before the expiration of that time period,

respondent requested an extension of time to file, see Letter from Lea La Ferlita, Counsel for

Respondent, to Judge Garaufis (March 3, 2009), D.E. # 3, which request Judge Garaufis

granted, extending the deadline for respondent's show-cause response to May 12, 2009.  See

Order (March 9, 2009), D.E. # 4. Respondent filed its response on that date. See Resp't

Resp. to Pet. for Writ of Habeas Corpus, D.E. # 5. Accordingly, pursuant to Rules 4 and 5 of

the Rules Governing § 2254 Cases, respondent's answer to the petition was timely filed.

**II. Motion to Stay**

In his May 18th letter-motion, petitioner requests a stay of the petition to enable him to

return to state court to exhaust his claims. See 5/18/09 Pet'r Mot., at 1-3. For the reasons

that follow, this Court recommends that petitioner's motion to stay be denied.

Where a habeas petition is mixed, containing both exhausted and unexhausted claims,

the petition may, in certain limited circumstances, be stayed and held in abeyance to permit the

petitioner to present his unexhausted claims to the state court and then to return to federal court

for review of his perfected petition. See Rhines v. Weber, 544 U.S. 269, 277-78 (2005). Stay

and abeyance should be permitted if and only if "the district court determines that there was

good cause for the petitioner's failure to exhaust his claims first in state court." Id. at 277.

Even then, "the district court would abuse its discretion if it were to grant [a habeas petitioner]

a stay when his unexhausted claims are plainly meritless." Id.

By contrast, where, as here, the petition is not mixed, and contains only unexhausted

claims, federal courts that have considered the issue are in agreement that the stay-and-

abeyance procedure described in Rhines is not available. See Raspberry v. Garcia, 448 F.3d

1150, 1154 (9th Cir. 2006); Dollar v. Rogers, Civil No. 05-5594 (RBK), 2007 WL 2990663,

at *11 (D.N.J. Oct. 9, 2007); Polanco v. Ercole, No. 06 Civ. 1721 (RMB) (DFE), 2007 WL

2192054, at *2, 8 (S.D.N.Y. July 31, 2007); McClure v. Ozmint, No. 2:06-1076 (HMH)

(RSC), 2007 WL 1656227, at *25 (D.S.C. June 5, 2007); McCabe v. Pennsylvania, 419

F.Supp.2d 692, 696 (E.D. Pa. 2007); Thomas v. Brown, No. C 05-2544 (JSW) (PR), 2007

WL 781956, at *3 (N.D. Cal. Mar. 13, 2007) (citation omitted); Shomo v. Maher, No. 04

Civ. 4149 (KMK), 2005 WL 743156, at *7 n.3 (S.D.N.Y. Mar. 31, 2005). This is true "even

where the record shows that there were exhausted claims that could have been included."

Thomas, 2007 WL 781956, at *3 (citing Raspberry, 448 F.3d at 1154).

Here, the habeas petition contains four claims: (1) that petitioner was arrested in his

home without an arrest warrant, in contravention of his Fourth Amendment rights; (2) that his

speedy-trial rights pursuant to both the federal constitution and New York Criminal Procedure

Law Section 30.30 were violated; (3) that the denial of his motion to withdraw his guilty plea

without a hearing violated his due process rights; and (4) that the bail amount imposed was

excessive. Petitioner's direct appeal concerned entirely different issues, and, apart from a *pro

se* habeas petition rejected by the state sentencing judge, petitioner did not collaterally

challenge his conviction in state court; hence, the claims asserted in the habeas petition were

not presented to the highest state court available and are, therefore, unexhausted.[10] See

O'Sullivan, 526 U.S. at 848-49; Aparicio v. Artuz, 269 F.3d 78, 89-90 (2d Cir. 2001);

Strogov v. Attorney Gen. of N.Y., 191 F.3d 188, 191 (2d Cir. 1999). See also *infra* Part

---

[10] Petitioner's motion to stay and amend appears to seek leave to plead the following new
bases for habeas relief: (1) ineffective assistance of counsel in connection with petitioner's
guilty plea and sentencing; (2) violation of petitioner's federal due process rights by the New
York Court of Appeals when it denied his application for leave to appeal; and (3) mental
incompetency to plead guilty. Like the claims raised in the habeas petition, none of these
proposed new claims was fairly presented to the highest state court available and each is,
therefore, unexhausted. See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 848-49 (1999).
Accordingly, even if the District Court were inclined to grant leave to amend, petitioner's
motion to stay should be denied, as the amended petition would contain only unexhausted
claims.

IV.A.  To be sure, there are exhausted claims that petitioner could have included in the petition, i.e., the claims, raised by petitioner on direct appeal, that (1) his right to a fair and impartial hearing before the grand jury was violated by the court reporter's unprofessional behavior, and (2) his waiver of his right to appeal was invalid.  But because petitioner did not raise these claims in his habeas petition, the petition is not a mixed one, and thus the stay-and-abeyance procedure described in Rhines is unavailable.  See, e.g., Rasberry, 448 F.3d at 1154; Atkins, 410 F.3d 451, 456 n.1 (8th Cir. 2005).  Accordingly, petitioner's motion to stay the petition should be denied.[11]

## III. Motion for Leave to Amend

In addition to requesting a stay of the petition, petitioner's May 18th letter-motion seeks to "convert" his petition to reflect it as having been brought pursuant to statutory provisions other than 28 U.S.C. § 2254, as well as to add new bases for habeas relief.  For the following reasons, this Court concludes that any such amendment would be futile and, accordingly, respectfully recommends that leave to amend be denied.

Motions for leave to amend habeas petitions are governed by Rule 15 of the Federal Rules of Civil Procedure.  See 28 U.S.C. § 2242; Mayle v. Felix, 545 U.S. 644, 649 (2005); Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001).  Under Rule 15, where, as here, a responsive pleading has already been filed, a pleading may be amended "only with the opposing party's written consent or the court's leave[,]" which should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Even in the habeas context, amendments are

---

[11]  The legal ramifications of petitioner's failure to exhaust his claims are discussed in Part IV.A of this opinion.

favored because they tend to facilitate a proper decision on the merits.  See Littlejohn, 271

F.3d at 364 ("[W]e see nothing in AEDPA inconsistent with the application of Rule 15, which

promotes consideration of all of a party's claims on the merits.") (citations omitted).

The decision whether to grant leave to amend is committed to the discretion of the

district court, which "'is not subject to review on appeal except for abuse of discretion[.]'"

Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (per curiam) (quoting 3

James Wm. Moore et al., Moore's Federal Practice ¶ 15.08[4], at 15-64 (2d ed. 1992)).  The

district court's discretion, however, is not unlimited:  Under Rule 15, a motion for leave to

amend should be denied only where there is "evidence of undue delay, bad faith or dilatory

motive on the part of the movant, undue prejudice to the opposing party, or futility[.]"

Monahan v. New York City Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000) (citing Foman

v. Davis, 371 U.S. 178, 182 (1962)); see also Ching v. United States, 298 F.3d 174, 180 (2d

Cir. 2002) (motion for leave to amend habeas petition may be denied where necessary to

thwart dilatory, unfairly prejudicial, or otherwise abusive tactics, or where amendment would

be futile) (citing Littlejohn, 271 F.3d at 363; Jones v. N.Y. State Div. of Military & Naval

Affairs, 166 F.3d 45, 50 (2d Cir. 1999)).  In the habeas context, the discretion to deny leave to

amend serves to "safeguard[] against the possibility that Rule 15's amendment procedures will

be exploited by petitioners for the purpose of undermining the rules designed to prevent abuse

of the writ, regardless of the procedural posture of the case at the time the motion to amend is

brought."  Id.

**A. Motion to Amend the Petition to Reflect It as Having Been Brought Pursuant to Statutory Provisions Other Than 28 U.S.C. § 2254.**

In order to avoid what he describes as the "red tape[]" associated with 28 U.S.C. § 2254, petitioner seeks to "convert and amend" his petition as having been brought pursuant to 28 U.S.C. § 2255, 42 U.S.C. § 1983, 28 U.S.C. § 2241, and/or New York Civil Rights Law § 79-C. See 5/18/09 Pet'r Mot., at 2, 4. Unfortunately for petitioner, section 2254's "red tape" cannot be avoided; the myriad statutory provisions invoked by petitioner simply do not govern a federal challenge to the validity of a state court conviction. See Nelson v. Campbell, 541 U.S. 637, 643 (2004) ("[Section] 1983 must yield to the more specific federal habeas statute, with its attendant procedural and exhaustion requirements, where an inmate seeks injunctive relief challenging the fact of his conviction or the duration of his sentence.") (citation omitted); Clay v. United States, 537 U.S. 522, 523 (2003) ("Section 2255 . . . governs only petitions by federal prisoners[.]"); Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) ("[W]e hold today that when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); see also Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001) ("A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction.").

Accordingly, this Court recommends that petitioner be denied permission to "convert" his petition to reflect it as having been brought pursuant to some statutory provision other than

28 U.S.C. § 2254, as any such "conversion" would be futile.  See In re Tamoxifen Citrate

Antitrust Litig., 429 F.3d 370, 374 (2d Cir. 2005) ("[W]here amendment [under Rule 15]

would be futile, denial of leave to amend is proper.") (citing Van Buskirk v. N.Y. Times Co.,

325 F.3d 87, 91-92 (2d Cir. 2003)); accord Ramdeo v. Phillips, No. 04-CV-1157 (SLT), 2006

WL 297462, at *3 (E.D.N.Y. Feb. 8, 2006).

### B. Motion for Leave to Amend to Add Additional Unexhausted Claims

Construing petitioner's May 18th letter-motion broadly, petitioner raises several new

bases for relief in connection with his request for leave to amend.  Specifically, petitioner

claims that (1) he received ineffective assistance from counsel during the plea and sentencing

proceedings in state court; (2) his due process rights were violated when the New York Court

of Appeals denied his application for leave to appeal; and (3) he was not mentally competent

when he entered his guilty plea.  See generally 5/18/09 Pet'r Mot., at 1-3.  As previously

noted, all of these claims are unexhausted.  See supra note 10.

"The mere fact that claims are unexhausted does not make them futile, so long as a

petitioner can obtain a stay of the habeas proceedings while he exhausts those claims."

Ramdeo, 2006 WL 297462, at *4 (internal quotation marks and citation omitted).  It follows,

then, that "[w]here, as here, a court is not prepared to grant petitioner a stay of habeas

proceedings pending the exhaustion of his claims, 'it would be futile to grant leave to amend

the petition.'" Gibson v. Artus, No. 05-Civ.-3009 (RMB) (KNF), 2007 WL 2319135, at *3

(S.D.N.Y. May 7, 2007) (quoting Ramdeo, 2006 WL 297462, at *4).

As previously discussed, the Rhines stay-and-abeyance procedure is available only

where the petition is mixed.  See supra Part II.  Accordingly, to the extent that the instant

-15-

motion can be construed to propose the addition of the above-described unexhausted claims, amendment would be futile, as the amended petition would continue to contain only unexhausted claims. For that reason, this Court respectfully recommends that leave to amend be denied.[12]

## IV. The Habeas Petition

### A. Procedural Default

Where a habeas petition contains only unexhausted claims, the petition may be dismissed without prejudice to permit the petitioner to exhaust his claims in state court and then return to federal court (assuming AEDPA's one-year statute of limitations has not yet expired). See McCabe, 419 F.Supp.2d at 696; Thomas, 2007 WL 781956, at *4; Polanco, 2007 WL 2192054, at *8. However, where the petitioner "no longer has 'remedies available' in the state courts under 28 U.S.C. § 2254(b)," the habeas court will deem the claims to be exhausted, rather than requiring the petitioner to go through the futile process of seeking further state review. See Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994). See also McCabe, 419 F.Supp.2d at 696 ("If, however, state law clearly forecloses state court review of unexhausted claims, . . . [e]xhaustion is not possible, and sending the claims back to state court would therefore be futile.") (internal quotation marks and citations omitted). In that situation, "the claims are considered to be procedurally defaulted." Id.; see Coleman v. Thompson, 501 U.S. 722, 735 n.1, 750 (1991); Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).

In this case, petitioner's direct appeal from his conviction raised none of the issues

---

[12] Even if the District Court were inclined to permit petitioner to include these claims, this Court would nonetheless recommend that the amended petition be dismissed because, as discussed *infra* Part IV.B.1 & 3, those claims lack merit.

presented in his habeas petition or in his proposed amended petition.  Therefore, he can no

longer obtain review of his claims by the New York Court of Appeals, as the time for seeking

reconsideration of the denial of his leave application has expired, and New York limits

criminal defendants to only one application for leave to appeal.  See N.Y. Court R. §

500.20(d); People v. Nesbitt, 621 N.Y.S.2d 867, 867 (1st Dep't 1995) ("Denial of the

application for permission to appeal by the judge or justice first applied to is final and no new

application may thereafter be made to any other judge or justice.").  Petitioner is likewise

procedurally barred from seeking collateral review of his claims in state court, because nearly

all of his claims and proposed claims could have been raised on direct appeal.[13]  See N.Y.

Crim. Pro. Law § 440.10(2)(c).  Accordingly, petitioner's claims should be deemed exhausted

for purposes of federal habeas review.  See, e.g., Perez v. Greiner, 296 F.3d 123, 124 n.2 (2d

Cir. 2002).

　　　This same procedural default prevents habeas review of the merits of petitioner's

claims.  Federal courts are precluded from reviewing claims that have been procedurally

defaulted "unless the prisoner can demonstrate cause for the default and actual prejudice as a

---

[13] To the extent that petitioner's writ may be generously construed to include a claim of
ineffective assistance of appellate counsel, that claim is unexhausted, but is not procedurally
defaulted, since it still could be raised in a writ of *error coram nobis* in state court.  See People
v. Bachart, 69 N.Y.2d 593, 596 (1987).  However, because the issues that appellate counsel did
not pursue on appeal are meritless, see generally *infra* Part IV.B.2 & 3, petitioner cannot make
the requisite showing of deficient performance and prejudice, in order to substantiate his claim
of ineffective assistance of appellate counsel.  See *infra* Part IV.B.1.b; see also Smith v.
Robbins, 528 U.S. 259, 285 (2000); Forbes v. United States, 574 F.3d 101, 106 (2d Cir. 2009).
For that reason, the Court should deny his request for habeas relief on that ground.  See 28
U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus may be denied on the merits,
notwith-standing the failure of the applicant to exhaust the remedies available in the courts of the
State.").

result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. To make the latter showing, a petitioner must establish that he is "actually innocent." See Aparicio, 269 F.3d at 90.

Here, petitioner's sole excuse for failing to exhaust his claims is that he received ineffective assistance from counsel in both the trial court and on direct appeal. See Pet. at 6, 8, 9, 11. "[I]neffective assistance of appellate counsel claims cannot constitute 'cause' for procedural default unless first presented in state court as an independent constitutional claim." DiSimone v. Phillips, 461 F.3d 181, 191 (2d Cir. 2006) (citing Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000)). Petitioner raises his claims of ineffective assistance of appellate counsel and trial counsel for the first time in the instant habeas petition, and offers no justification for having failed to first present those claims to a state court. See Taylor v. Mitchell, 939 F.Supp. 249, 255 (S.D.N.Y. 1996) (quoting Murray v. Carrier, 477 U.S. 478, 489 (1986)). And, in any event, in the habeas context, "[s]trategic choices, such as deciding which issues to raise on appeal, made after thorough investigation of the law and facts[,] . . . are virtually unchallengeable." Brunson v. Tracy, 378 F.Supp.2d 100, 112 (E.D.N.Y. 2005) (internal quotation marks and citation omitted). Accordingly, petitioner has not demonstrated cause for his procedural default in state court.

Nor has petitioner established that failure to consider his claims would result in a fundamental miscarriage of justice, inasmuch as he has made no showing that he is actually innocent. To be sure, petitioner maintained his innocence at sentencing, see 11/14/05 Tr. at 19, 23, and continues to do so today. See 5/18/09 Pet'r Mot., at 2. However, petitioner does

not point to the existence of any new evidence showing that he is factually innocent.  See

Murden v. Artuz, 497 F.3d 178, 194 (2d Cir. 2007) ("To demonstrate actual innocence a

habeas petitioner must show that it is more likely than not that no reasonable juror would have

convicted him in light of the new evidence. . . . Actual innocence requires not legal innocence

but factual innocence.") (internal quotation marks and citations omitted).  Petitioner has

therefore failed to establish that unless his procedural default is excused, a fundamental

miscarriage of justice will occur.

Petitioner's protests notwithstanding, a review of the record reveals that petitioner's

claim of actual innocence is baseless:  To begin, petitioner admitted, for purposes of

disposition, that he used a dangerous instrument to cause physical injury to Rohena.  See

3/2/05 Tr. at 18-19.  Although, at sentencing, petitioner changed his story, see 11/14/05 Tr. at

19, the sentencing court found that there was nothing in the record contradicting the version of

events offered by the prosecution and Rohena.  See id. at 21.  In addition, Detective Burrell

testified that the following exchange occurred with petitioner on the way to Central Booking --

an exchange that petitioner does not dispute:

> A:    I [Burrell] said, but you [petitioner] just can't you know go around
>       hitting women and stuff of that nature.
>
> Q:    Did he respond in any way?
>
> A:    He said, well, she hits me.  Or starts with me, something to that
>       substance, or fights with me.  To that substance.
>
> Q:    And when he said, sometimes she hits me or she fights with me, what
>       did you say to him, if anything?
>
> A:    I said, well, that still doesn't give you the reason to do what you did
>       tonight.  And then he said, well, sometimes they deserve it.

8/4/04 Tr. at 12-13. These statements support the conclusion that petitioner is not, as he claims, factually innocent.[14]

In sum, this Court concludes that, because the petition contains only unexhausted claims that are foreclosed from state court review, no purpose would be served by dismissing the petition without prejudice to enable petitioner to return to state court to exhaust those claims. Moreover, petitioner has shown no cause for the default, nor has he demonstrated that he is actually innocent. As his claims are procedurally defaulted, this Court respectfully recommends that the habeas petition be dismissed.

**B. Merits of the Habeas Petition**

Even assuming *arguendo* that petitioner's claims were not procedurally defaulted, they nevertheless are meritless.

**1. Validity of Petitioner's Guilty Plea**

"Generally a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea." Whitehead v. Senkowski, 943 F.2d 230, 233 (2d Cir. 1991) (citing Tollett v. Henderson, 411 U.S. 258, 267 (1973)). As the Supreme Court explained:

---

[14] These self-incriminating statements made by petitioner to Detective Burrell were suppressed by the trial court as violative of Miranda. See 5/12/09 Resp't Decl., Ex. G at 4-5; id. Ex. H. Although petitioner's statements would thus have been inadmissible in the prosecution's direct case had the underlying criminal case gone to trial, uncoerced statements taken in violation of Miranda can be used for impeachment purposes. See, e.g., United States v. Patane, 542 U.S. 630, 639 (2004) (citations omitted). See also 5/12/09 Resp't Decl., Ex. G at 5. Accordingly, in connection with petitioner's claim of actual innocence, the Court may consider the self-incriminatory statements made by petitioner to Detective Burrell. Moreover, even if those statements were disregarded, petitioner's claim of actual innocence would fail.

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in [McMann v. Richardson, 397 U.S. 759 (1970)].

Tollett, 411 U.S. at 267. This principle applies with equal force where, as here, the accused entered an Alford plea. See Whitelaw v. Spitzer, No. 04-CV-6570 (MAT), 2009 WL 2151888, at *2 & n.4 (W.D.N.Y. July 16, 2009) (applying Tollett bar to habeas petitioner's claim that her constitutional right to a speedy trial was violated, where petitioner entered an Alford plea in the trial court). See also Alford v. Schomig, 254 Fed.App'x 594, 595-97 (9th Cir. 2007) (applying Tollett bar to petitioner's claim that his trial counsel was ineffective in failing to secure a full pretrial psychiatric evaluation of petitioner); Fields v. Attorney Gen. of the State of Md., 956 F.2d 1290, 1293 n.9, 1294-97 (4th Cir. 1992) (applying Tollett bar to petitioner's claim that his right to counsel at rearraignment was violated); Flores-Gonzales v. Farwell, No. 3:05-cv-647 (LRH) (RAM), 2009 WL 511131, at *13 n.28 (D. Nev. Feb. 27, 2009) ("Ninth Circuit law confirms that the *Tollett* waiver and bar applies to *nolo contendere* pleas to the same extent as guilty pleas. Thus, *Tollett* is applicable to an *Alford* plea, whether viewed as a guilty plea or instead as a *nolo contendere* plea.") (citing Ortberg v. Moody, 961 F.2d 135, 137-38 (9th Cir. 1992); Alford, 400 U.S. at 35-38).

### a. Petitioner's Competence

Petitioner, in his motion to amend, suggests that his guilty plea was invalid because he was not mentally competent at the time he entered the plea. Even if this "claim" were deemed

exhausted and petitioner were permitted to amend to add it, the claim is wholly without merit

and does not serve to undermine the <u>Tollett</u> waiver and bar. Petitioner contends that he suffers

from a psychiatric disorder[15] and invites the Court to "check [his] medical records in prison."

<u>See</u> 5/18/09 Pet'r Mot., at 2-3. Petitioner otherwise offers no evidence of any mental

disorder, although the sentencing court alludes to petitioner's psychological problems, and

references its earlier "finding of [petitioner's] sanity." <u>See</u> 11/14/05 Tr. at 18. Even

assuming that petitioner is schizophrenic, a review of the record reveals that petitioner had

little, if any, difficulty understanding the nature of the plea proceeding, and that he made a

rational decision to waive his trial rights and enter an <u>Alford</u> plea:

> THE COURT: Did you hear your lawyer at this time offer to have you
> withdraw your plea of not guilty and enter a plea of guilty under the second
> count of the indictment in satisfaction of all the counts, that includes assault in
> the second degree, as charged under Indictment 1800-2003?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Sir, is that your wish?
>
> THE DEFENDANT: Yes, your Honor. I take it. I don't know, want to take
> no chances no more. I'll move on.
>
> THE COURT: Sir, you realize that you have a right under our constitution --
> let me finish -- to have a jury trial, to have witnesses against you called and
> cross examined, to have an attorney, and to have a trial by a jury of your peers
> who will make a decision and that by taking this plea today you are waiving all
> those rights? You understand that, sir?
>
> THE DEFENDANT: Yes, your Honor, I understand the right.
>
> THE COURT: That is your wish?

---

[15] The Court will assume that his reference to a "psychophenaia disorder" was intended to
signify schizophrenia. <u>See</u> 5/18/09 Pet'r Mot., at 3.

THE DEFENDANT: I understand the right. And I don't trust it. I don't believe in it.

THE COURT: We'll do it stage by stage. First, you know of the rights you have and you're giving up those rights voluntarily and of your own free will, is that correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: You also understand in this case there has been an offer made by the People that they will in fact offer three years in this case; and the court has said that I will accept the offer of three years and I will also permit an Alfred [*sic*] Plea in this case? Do you understand that, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: Any other promises been made to you sir, at all?

THE DEFENDANT: No promises. Except I'm scared to go to trial and get more years. I don't want no years.

THE COURT: Fine. Sir, I understand what you're telling me. I understand that. But I'm also making sure you understand what's going on here now is that you're getting an Alfred [*sic*] Plea and three years; do you understand that?

THE DEFENDANT: Thank you, sir.

THE COURT: Okay. Sir, it has been charged that in the county of Queens that you did on August 23rd, 2003 cause physical injury to a person, that being Elaina [*sic*] Rohena, by means of a dangerous instrument. And, sir, what I'm about to ask you now is that in light of the fact that you do not wish to pursue this matter further, and you are aware that if you do pursue it, there is a possibility of getting greater time than that has been promised you, it's your willingness at this time to admit to that for the purpose of having this disposition; is that correct? Not that you are saying you did it but you're willing to admit it for purposes of disposition.

THE DEFENDANT: Yes, your Honor.

3/2/05 Tr. at 17-19. Clearly, the trial court had no reason to doubt that petitioner was

competent to enter his <u>Alford</u> plea,[16] and nothing in the record supports the contrary suggestion in petitioner's habeas submissions.

### b. Petitioner's Challenge to Counsel's Effectiveness

Petitioner additionally maintains, in his motion to amend, that he received ineffective assistance of counsel in connection with his guilty plea. <u>See</u> 5/18/09 Pet'r Mot., at 6. Like petitioner's claim of mental incompetence, petitioner's challenge to counsel's effectiveness is unexhausted and absent from his habeas petition, and his allegations provide an insufficient basis for disregarding the <u>Tollett</u> bar: petitioner fails to specify exactly how counsel was ineffective, and simply asserts, without more, that his guilty plea and sentence are constitutionally defective due to ineffective assistance. Such vague, conclusory allegations cannot form the basis for habeas relief. <u>See</u>, <u>e.g.</u>, <u>Rolle v. West</u>, No. 05-CV-591 (NGG), 2008 WL 3887662, at *18 (Garaufis, J.) (E.D.N.Y. Aug. 21, 2008) ("[A] federal habeas petition 'may be dismissed if it contains only vague or conclusory allegations.'") (citing <u>Blackledge v. Allison</u>, 431 U.S. 63, 75 (1977)).

Even assuming that petitioner could establish that counsel's performance somehow fell below an objective standard of reasonableness, habeas relief would not be warranted, because petitioner has failed to satisfy the prejudice prong of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which governs claims of ineffective assistance of counsel. <u>See</u> <u>Carrion v. Smith</u>, 549 F.3d 583, 588 (2d Cir. 2008). In the context of a guilty plea, the criminal defendant must also show a reasonable possibility that but for counsel's errors, the outcome would have been

_____

[16] In addition, at sentencing, petitioner's counsel confirmed his client's competence. <u>See</u> 11/14/05 Tr. at 11.

-24-

different -- i.e., the accused would not have pleaded guilty and would likely have been acquitted at trial, or would have received a significantly more favorable sentence. See Hill v. Lockhart, 474 U.S. 52, 59-60 (1985); United States v. Keleta, 552 F.3d 861, 866 (D.C. Cir. 2009) (citation omitted); Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003) (citations omitted).

Here, petitioner does not contend, nor does the record establish, that, had he opted to stand trial, he would likely have been acquitted. Moreover, as a result of counsel's efforts, petitioner received a much more lenient sentence -- a result that petitioner himself, during the plea proceeding, expressly desired. See 3/2/05 Tr. at 17 ("I take [the plea]. I don't know, want to take no chances no more. I'll move on."); id. at 18 ("I'm scared to go to trial and get more years. I don't want no [more] years."). The top count in the indictment, Assault in the First Degree, is a Class B felony in New York, see N.Y. Penal Law § 120.10, which carries a sentence ranging anywhere from six to twenty-five years. See id. § 70.02(3)(a). Assault in the Second Degree, to which petitioner pled guilty, is a Class C felony, see id. § 120.05(2), and carries a sentence ranging anywhere from four and one-half years to fifteen years. See id. § 70.02(3)(b). That petitioner, on account of a very favorable plea bargain, received only three years' incarceration further undercuts his argument that his lawyer was ineffective during the plea proceeding. The sentencing court expressly expressly recognized counsel's efficacy in this regard.[17] See 11/14/05 Tr. at 15 ("[W]ithout your attorney the various types of motions

---

[17] Petitioner was represented by different counsel during the plea and sentencing proceedings. During the plea proceeding, petitioner was represented by appointed counsel, who apparently is a professor at St. John's University. See 11/14/05 Tr. at 15. During sentencing, petitioner

(continued...)

-25-

you [petitioner] are making now, that you are trying to make all in one package, would have

no clarity at all to this Court."); id. at 21 ("I find your former lawyer did the best for you by

giving you reduced time."). Under AEDPA, those factual findings are presumed to be correct,

and petitioner has not rebutted them "by clear and convincing evidence." See 28 U.S.C. §

2254(e)(1).

In sum, because the record establishes that petitioner's guilty plea was in fact knowing,

intelligent, and voluntary, petitioner waived any challenge to the alleged constitutional

infirmities that occurred prior to the entry of his guilty plea.[18]

### 2. Grounds for Relief Asserted in the Habeas Petition

Petitioner asserts four grounds for relief in his habeas petition: (1) that he was arrested

in his home without an arrest warrant, in contravention of his Fourth Amendment rights; (2)

that his speedy-trial rights pursuant to both the federal constitution and New York Criminal

Procedure Law Section 30.30 were violated;[19] (3) that the denial of his motion to withdraw his

guilty plea without a hearing violated his due process rights; and (4) that the bail amount

imposed was excessive. Even had these claims been preserved, each is without merit, as

demonstrated below.

---

[17](...continued)
was represented by retained counsel. See id.

[18] Three of the four grounds for habeas relief asserted by petitioner in his petition fall into this category: illegal search and seizure, speedy-trial violations, and excessive bail. In the proposed amended petition, none of petitioner's claims fall into this category.

[19] In the petition, petitioner refers to speedy-trial rights under N.Y. Crim. Proc. Law § 180. See Pet. at 7. That statute does not contain any speedy-trial provisions. New York does, however, provide a statutory speedy-trial right. See N.Y. Crim. Proc. Law. § 30.30. The Court assumes *arguendo* that petitioner intended to refer to the latter section.

### a. Illegal Search and Seizure

Petitioner first claims that he was subjected to an illegal search and seizure, in contravention of his Fourth Amendment rights, when he was arrested "at his home" without a warrant. As previously indicated, petitioner's valid guilty plea bars habeas review of this claim. See, e.g., Mapp v. Phillip, No. 04-CV-889 (JG), 2005 WL 1541044, at *5 (E.D.N.Y. June 29, 2005). That aside, Fourth Amendment claims are not cognizable on federal habeas review, see Stone v. Powell, 428 U.S. 465, 482 (1976); McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69 (2d Cir. 1983), "unless the petitioner was deprived of a full and fair opportunity to litigate [those] claims before trial." Ravenell v. Phillips, No. 05-CV-594 (NGG), 2009 WL 255993, at *3 (E.D.N.Y. Feb. 3, 2009) (citation omitted). In the Second Circuit, "review of fourth amendment claims in habeas petitions w[ill] be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (citation omitted).

Here, petitioner claims that he was arrested without a warrant. There is no evidence in the record, however, indicating that petitioner was deprived of an opportunity to litigate this claim in state court. To the extent that petitioner claims he was deprived of an opportunity to litigate the legality of his arrest, he could have brought a motion under New York Criminal Procedure Law Section 710.10, which federal courts have approved as facially adequate for litigating Fourth Amendment claims. See Capellan, 975 F.2d at 70 n.1. Petitioner did not

take advantage of that procedure,[20] and cannot now complain that there was an unconscionable breakdown in a process he elected not to utilize.

For these reasons, even if this claim were not procedurally defaulted and/or barred by petitioner's guilty plea, petitioner would not be entitled to habeas relief on this ground.[21]

### b. Speedy-Trial Violations

Petitioner claims, as his second ground for habeas relief, violations of his right to a speedy trial pursuant to both the Sixth and Fourteenth Amendments to the United States Constitution and New York Criminal Procedure Law Section 30.30. See Pet. at 7. His Section 30.30 claim is not cognizable on habeas review: "Because [Section 30.30] is merely a state law provision requiring the prosecution to be ready for trial, a § 30.30 claim does not raise a federal constitutional claim." Cadilla v. Johnson, 119 F.Supp.2d 366, 372-74 (S.D.N.Y. 2000) (collecting cases). See also Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus review does not lie for errors of state law.") (internal quotation marks and citations omitted).

As to the federal speedy-trial claim, petitioner's valid guilty plea bars review by a federal habeas court. See, e.g., United States v. Coffin, 76 F.3d 494, 496 (2d Cir. 1996). Furthermore, petitioner has not made the showing necessary to establish a constitutional

---

[20] His decision not to press that claim in the trial court was entirely understandable, as the detective entered the residence at the invitation of the complaining witness' mother, who lived there.

[21] Petitioner also complains that he was not adequately apprised of his Miranda rights after his arrest. See Pet. at 6. However, following an evidentiary hearing in state court, petitioner *prevailed* on his Miranda claim.

speedy-trial violation.  Courts consider four factors "in determining whether there has been a deprivation of [a criminal] defendant's constitutional right to a speedy trial . . . : (1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of his right; and (4) the prejudice to the defendant."  United States v. Vasquez, 918 F.2d 329, 337-38 (2d Cir. 1990) (citing Barker v. Wingo, 407 U.S. 514, 530-33 (1972)).  Here, petitioner maintains that he "was arrested on August 26, 2003 and remained in local jail past the 180 day statute . . . and subsequently sentenced appx. 2 years later on November 24, 2005.  The District Attorney stated on numerous occasions that 'the People were not ready for a trial.'"  Pet. at 7.

To be sure, petitioner did assert his speedy-trial rights by making a *pro se* motion in the trial court, and the motion was denied.  See 5/12/09 Rep't Decl., Ex. F.[22]  But petitioner does not and cannot show that he was prejudiced by the delay, as he was arrested and sentenced well within the statute of limitations for the crime charged, and received full credit for time served.  Further, the length of the delay between petitioner's arrest and sentencing -- slightly more than two years -- is not, as a general matter, of constitutional significance.  See United States v. McGrath, 622 F.2d 36, 41 (2d Cir. 1980) (holding that a 24-month delay is "considerably shorter than that of other cases in which no Sixth Amendment violation has been found.").  This is especially true where, as here, a substantial portion of the delay was caused by consideration of the various pretrial motions brought by petitioner in the trial court (two of

---

[22]  The court's denial of the motion consisted of a handwritten endorsement referencing the minutes of June 22, 2004, which have not been supplied to this Court.  See 5/12/09 Resp't Decl., Ex. F.  It is thus unclear whether the motion was denied on the merits.  Cf. id. Ex. C (denying a separate *pro se* motion by petitioner without reaching the merits).  The Court will assume, for purposes of determining whether deference is required under AEDPA, that the denial of petitioner's speedy-trial motion was not on the merits.

which required evidentiary hearings).  See Vasquez, 918 F.2d at 338 (noting that "most of the 26 months at issue was consumed by consideration of defendants' pretrial motions . . . .").

Weighing the relevant factors, this Court concludes that, even if this claim were not procedurally defaulted and/or barred by petitioner's guilty plea, habeas relief would not be warranted on this ground.

### c. Denial of Motion to Withdraw Guilty Plea Without a Hearing

The only claim asserted in the original petition that involves events occurring after the entry of his guilty plea concerns the trial court's denial of petitioner's motion to withdraw that plea without a hearing.  However, contrary to the premise of petitioner's claim, there is no federal constitutional right to a hearing on a motion to withdraw a guilty plea.  See Lebron v. Sanders, No. 02 Civ. 6327, 2008 WL 793590, at *10 (S.D.N.Y. Mar. 25, 2008) (collecting cases).  Accordingly, even if this claim were not procedurally defaulted, petitioner would not be entitled to habeas relief on this ground.

### d. Excessive Bail

The habeas petition also includes an allegation of excessive bail.  "It is clear that federal habeas corpus is available to test the constitutionality of the excessiveness - or denial - of bail by a state court to a prisoner awaiting trial."  Miller v. Walker, 413 F.Supp.2d 251, 256 (S.D.N.Y. 2006) (internal quotation marks and citation omitted).  It is equally clear, however, that petitioner's excessive-bail claim became moot upon his conviction.  See, e.g., Lombard v. Mazzuca, No. 00-CV-74622 (JG), 2003 WL 22900918, at *6 (E.D.N.Y. Dec. 8, 2003) (citing Flanagan v. United States, 465 U.S. 259, 266 (1984); United States v. Helmsley, 864 F.2d 266, 269 (2d Cir. 1988)).  Accordingly, even if this claim were not procedurally defaulted

and/or barred by petitioner's guilty plea, it would provide no basis for habeas relief.

### 3. Proposed Amendments to the Petition

As previously discussed, petitioner's May 18th letter-motion apparently seeks to add three new claims to the petition. Specifically, petitioner claims that (1) he received ineffective assistance from counsel during the plea and sentencing proceedings in state court; (2) his due process rights were violated when the New York Court of Appeals denied his application for leave to appeal; and (3) he was not mentally competent when he entered his guilty plea. See generally 5/18/09 Pet'r Mot., at 1-3.

This Court has recommended that petitioner be precluded from adding these un-exhausted claims. See *supra* Part III. Nonetheless, even if the District Court were inclined to permit amendment, the Court should nevertheless dismiss the amended petition. First, all of these claims are not only unexhausted but also procedurally defaulted. See *supra* Parts II, III.B & IV.A. Second, all of these claims lack merit. As previously discussed in connection with petitioner's attack on the validity of his guilty plea, there is simply no basis in the record for petitioner's arguments that he was not competent to plead guilty or that he received in-effective assistance of counsel in connection with his plea and sentencing. See *supra* Part IV.B.

The other proposed new claim -- that the New York Court of Appeals violated petitioner's due process rights when it denied his application for leave to appeal -- has no basis in law. Petitioner is not entitled to review of his claims by the New York Court of Appeals.

Accordingly, even if petitioner were permitted to include these claims in his petition, the amended petition should be denied.

## CONCLUSION

For all of the foregoing reasons, this Court respectfully recommends that (1) petitioner's motion to stay the petition be denied; (2) petitioner's motion for leave to amend be denied; and (3) the petition be dismissed.

Any objections to the recommendations contained in this Report and Recommendation must be filed with the Honorable Nicholas G. Garaufis on or before October 2, 2009. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to enter this Report and Recommendation into the ECF system, and to mail a copy to petitioner at the following address:

> Ndukwe Kalu, Inmate # 05A6015
> Arthur Kill Correctional Facility
> 2911 Arthur Kill Rd.
> Staten Island, NY 10309

**SO ORDERED.**

**Dated:**   **Brooklyn, New York**
**September 15, 2009**

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**